**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

**Case No.:**

AMETHYST ENTERPRISE INC.,
a Florida Corporation, and

AMETHYST DISTRIBUTORS, LLC,
a Florida Limited Liability Company,

*Plaintiffs*,

**DEMAND FOR JURY TRIAL**

vs.

AB BUSINESS PRO INC,
d/b/a HOOK SUPERMARKET
a Florida Corporation,

*Defendant.*
_____________________________________________/

## COMPLAINT

Plaintiffs, AMETHYST ENTERPRISE INC. ("AE") and AMETHYST DISTRIBUTORS LLC ("AD"), (collectively, "Plaintiffs"), by and through the undersigned counsel, hereby file their Complaint against Defendant, AB BUSINESS PRO INC d/b/a HOOK SUPERMARKET (hereinafter referred to as "AB PRO" or "Defendant"), and allege as follows:

## NATURE OF THE ACTION

1. This civil action arises from the Defendant's unauthorized use of counterfeit goods bearing AE's federally registered LION AND LIONESS and NEW EXTREME trademarks, asserting claims for federal trademark counterfeiting and infringement under 15 U.S.C. § 1114, federal unfair competition and false designation under 15 U.S.C. § 1125(a), and related Florida

common law and statutory claims.

2. Plaintiffs have been significantly harmed and continue to be harmed by Defendant's unauthorized and unlawful use of the LION AND LIONESS and NEW EXTREME Marks and are seeking injunctive and monetary relief.

**JURISDICTION**

3. This Court has subject matter jurisdiction over Plaintiffs' claims brought under the Lanham Act, 15 U.S.C. §1051 et seq. pursuant to 28 U.S.C. §1331, 28 U.S.C. §1338(a), and 15 U.S.C. §1121(a).

4. Plaintiffs' claims for infringement and unfair competition under the common laws of the State of Florida are within this Court's jurisdiction pursuant to 28 USC §1338(b) and 28 U.S.C. §1367.

5. This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. §1367, as such claims are so related to the federal claims that they form part of the same case or controversy.

6. Personal jurisdiction exists over Defendant because it is a Florida corporation with its principal place of business in Hialeah, Miami-Dade County, Florida.

**VENUE**

7. Venue is proper in this District under 28 U.S.C. §1391 because Defendant resides in this District, a substantial part of events or omissions giving rise to the claims occurred in Miami-Dade County, Defendant transacts business within this district, Defendant has engaged in business activities within this District, and there is no other district in which the action may otherwise be brought.

**THE PARTIES**

8. AE is a Florida corporation with its principal place of business in Broward County,

Florida. AE is the owner of a family of federally registered and common law trademarks, including the LION AND LIONESS and NEW EXTREME marks, and has the right to enforce its rights in its trademarks.

9. AD is a Florida limited liability company with its principal place of business in Broward County, Florida. AE authorizes AD to commercially exploit, enforce, and police the AE Family of Marks, including substantial rights in pursuing counterfeiting and infringement claims, and recovering monetary damages for past, present, and future violations as the exclusive licensee.

10. AB PRO is a Florida corporation with its principal place of business in Hialeah, Florida. Upon information and belief, AB PRO operates a retail convenience store located at 541 E 9th Street, Hialeah, FL 33010, where it engages in the sale of consumer products directly to the public. Upon information and belief, AB PRO has, without authorization, advertised, displayed, offered for sale, and sold products bearing counterfeit reproductions of AE's federally registered LION AND LIONESS and NEW EXTREME to consumers in commerce.

**GENERAL ALLEGATIONS**
**TRADEMARK RIGHTS AND PLAINTIFFS' RELATIONSHIP**

11. AE is the owner of a family of federal trademarks registered on the Principal Register of the United States Patent and Trademark Office ("USPTO"), which include IMAGE OF A MALE LION SITTING TO THE RIGHT OF A FEMALE LIONESS SLEEPING ON HER BACK (the "LION AND LIONESS" Mark) and NEW EXTREME, details of which are shown below:

| Trademark | U.S. Reg. No. | Date of Registration | Date of First Use |
|---|---|---|---|
|  | 6,934,684 | December 27, 2022 | January 1, 2016 |

| Trademark | U.S. Reg. No. | Date of Registration | Date of First Use |
|---|---|---|---|
| NEW EXTREME | 8,050,822 | December 02, 2025 | January 1, 2016 |

True and correct copies of the certificates of federal trademark registrations are marked as **Exhibit A** and are incorporated herein by reference as if set forth in full (collectively referred to as "AE Marks" or "AE Family of Marks").

12. AD is AE's exclusive licensee for the AE Marks in the United States for the goods identified herein, with AE's authorization and control over the use and quality of these marks. AD is authorized by AE and has all the substantial rights to commercially exploit, enforce, and police the AE Marks, including pursuing infringement and counterfeiting claims, and recovering monetary damages for past, present, and future violations.

13. AE has retained ownership of the AE Marks, and the goodwill symbolized thereby. AE retains residual rights, including ultimate ownership and quality control, and AE's right to police, enforce, and defend the LION AND LIONESS and NEW EXTREME marks. AD's rights are exclusive as a licensee within the scope of its authorization.

14. Accordingly, AE remains the registrant and owner and asserts claims under Section 32 of the Lanham Act. While AD does not assert §1114 claims independently, AD asserts claims as an exclusive licensee, where permitted by statute or common law, and asserts state law claims for its own injuries to distribution, sales, and goodwill.

**USE, GOODWILL, AND AUTHENTIC PRODUCTS**

15. AE owns all exclusive rights, title, and interests, including goodwill attached to the LION AND LIONESS and NEW EXTREME marks, and the right to police, enforce, and defend

the trademark rights.

16. Under AE’s authorization and control, the LION AND LIONESS and NEW EXTREME Marks have been used continuously in connection with dietary and nutritional supplements, with significant investment and goodwill.

17. The superiority of authentic goods bearing LION AND LIONESS and NEW EXTREME Marks is readily apparent to consumers, who enjoy the higher quality dietary and nutritional supplements in the marketplace. As a result, authentic goods bearing LION AND LIONESS and NEW EXTREME Marks are sold across countless retailers, including gas stations and convenience stores, across Florida.

18. Authentic products distributed by AD prominently feature the LION AND LIONESS and NEW EXTREME Marks, and include ingredient labels, nutritional facts, and disclaimers; examples are shown in **Exhibit B** and are incorporated herein by reference.

19. It is exactly because of their high quality and value that the authentic goods bearing AE Marks, including the LION AND LIONESS and NEW EXTREME Marks, are targeted by counterfeiters. The counterfeiters tarnish LION AND LIONESS and NEW EXTREME Marks by unlawfully selling dietary and nutritional supplements that have identical, or nearly identical, versions of the LION AND LIONESS and NEW EXTREME Marks affixed to products made with inferior material, thereby leading to significant illegitimate profits by retailers such as Defendant.

20. As a result of Plaintiffs’ expenditures and efforts, the LION AND LIONESS and NEW EXTREME Marks have come to signify the high quality of the herbal, nutritional, and dietary supplements designated by their federal trademark registrations and have acquired incalculable distinction, reputation, and goodwill.

## DEFENDANT’S KNOWLEDGE AND WILLFUL CONDUCT

21. By virtue of AE's federal registrations of the LION AND LIONESS and NEW

EXTREME Marks, Defendant had constructive notice of AE's claim of ownership of the Marks pursuant to 15 U.S.C. §1072.

22. Furthermore, on or around June 18, 2026, AE, through undersigned counsel, sent Defendant a demand letter notifying Defendant of AE's trademark rights and Defendant's sale of counterfeit goods bearing the LION AND LIONESS and NEW EXTREME Marks. The letter demanded that Defendant cease all infringing conduct and provide information concerning the source of the counterfeit products. A true and correct copy of the demand letter, including the U.S. Postal Service shipping label, is attached hereto as **Exhibit C**.

23. Defendant has failed to cooperate, respond meaningfully, provide supplier or source information, or take any remedial action despite notice of Plaintiffs' trademark rights and AE's demand that it cease its unlawful conduct.

24. Defendant's non-compliance and failure to provide information regarding the source of the counterfeit goods in the face of clear notice constitutes willful blindness, reckless disregard, and deliberate indifference to Plaintiffs' trademark rights in the LION AND LIONESS and NEW EXTREME Marks.

## DEFENDANT'S COUNTERFEIT SALES

25. Defendant has sold and, upon information and belief, continues to sell counterfeit goods bearing the LION AND LIONESS and NEW EXTREME Marks ("counterfeit goods" or "Defendant's counterfeit goods") directly to consumers from its convenience store.

26. Plaintiffs have first-hand knowledge of Defendant's sale of counterfeit goods bearing the LION AND LIONESS and NEW EXTREME Marks. In an ongoing investigation into the sale of counterfeit goods bearing these Marks, on or about May 21, 2026, Plaintiffs' investigator purchased Defendant's counterfeit goods directly from Defendant's convenience store. Upon inspection, Plaintiffs confirmed that the products sold to Plaintiffs' investigator were

not genuine, but counterfeit products bearing the infringing Marks. A true and correct copy of the purchase receipt and photographs of the counterfeit goods are attached hereto as **Exhibit D** and incorporated herein by reference.

27. Defendant's counterfeit goods are not genuine goods. They are designed to deceive consumers into believing they are authentic herbal, nutritional, and dietary supplements with the LION AND LIONESS and NEW EXTREME Marks. In essence, Defendant misleads consumers by likely selling low-quality, untested products that free ride on the goodwill of AE Marks, including the LION AND LIONESS and NEW EXTREME Marks, and in turn, Defendant reaps substantial ill-gotten profits. Defendant's conduct contributes to the complete flooding of the marketplace with counterfeit goods, which results in lost sales and damages to the Plaintiffs and irreparable harm to AE.

28. A side-by-side comparison of Plaintiffs' genuine, authentic products and Defendant's counterfeit goods purchased directly from Defendant's convenience store during an investigation is attached hereto as **Exhibit E**. The comparison clearly demonstrates material differences between Plaintiffs' authentic products and Defendant's counterfeit versions. Specifically, the casing of the counterfeit capsule is yellow and red, whereas Plaintiffs' authentic capsule is orange and yellow. See **Exhibit E**. Additionally, the powder contained within Plaintiffs' authentic capsule is a proprietary color manufactured exclusively for Plaintiffs to facilitate identification of counterfeit goods. By contrast, the powder inside Defendant's counterfeit capsule is white. These material and readily observable differences further evidence Defendant's unlawful offering for sale and sale of counterfeit goods bearing Plaintiffs' trademarks, including the LION AND LIONESS and NEW EXTREME Marks.

29. Through its business activities, Defendant has purposefully derived direct financial

benefits from offering for sale and selling counterfeit goods bearing Plaintiffs' trademarks to consumers in the State of Florida. By engaging in such conduct, Defendant has knowingly caused harm to Plaintiffs. Defendant's unlawful sale of counterfeit goods has diverted sales from Plaintiffs, caused consumer confusion, damaged Plaintiffs' goodwill and reputation, and resulted in lost business opportunities, customers, and revenue.

30. Due to Defendant's marketing, advertising, promotion, offering for sale, and sale of counterfeit goods, Defendant is likely to cause confusion among consumers in the marketplace who purchase the counterfeit goods from Defendant's convenience store. All of the foregoing acts have occurred without the authorization, consent, or approval of AE or AD.

31. Defendant's counterfeiting and infringing acts have resulted and will continue to result in irreparable harm to Plaintiffs in that, among other things, they: (1) deceive consumers into believing that the counterfeit goods originate from, or are affiliated with or authorized by, Plaintiffs, (2) falsely represent a sponsorship or association between Plaintiffs and Defendant, (3) deprive AE and AD of control over the nature and quality of goods sold under the LION AND LIONESS and NEW EXTREME Marks, (4) injure AE's relationship with its licensee and AD's relationships with its customers, (5) trade on AE's reputation, goodwill, and the commercial value of the Marks, and (6) divert sales from Plaintiffs.

## COUNT I
## FEDERAL TRADEMARK COUNTERFEITING AND INFRINGEMENT (15 U.S.C. § 1114) BY PLAINTIFF AE AGAINST DEFENDANT

32. Plaintiff AE repeats and realleges paragraphs 1 through 31 as if fully stated herein.

33. Defendant has used or continues to use in commerce the LION AND LIONESS and NEW EXTREME Marks, in a manner that falsely suggests that Plaintiffs are affiliated with, sponsor, or endorse Defendant and Defendant's counterfeit goods. Defendant's use of the LION

AND LIONESS and NEW EXTREME Marks is identical with, or substantially indistinguishable from, AE's registered marks, including the LION AND LIONESS and NEW EXTREME Marks, within the meaning of 15 U.S.C. §1116(d)(1)(B).

34. Defendant's activities create the false and misleading impression that Defendant is sanctioned, assigned, or authorized by either Plaintiff to use the LION AND LIONESS and NEW EXTREME Marks to advertise, offer for sale, or sell dietary and nutritional supplements bearing the LION AND LIONESS and NEW EXTREME Marks.

35. Defendant's use has caused and is likely to cause confusion or mistake, or to deceive people into erroneous belief that Defendant's counterfeit goods are authentic or otherwise authorized, sponsored by, or connected with the Plaintiffs, when in fact they are not.

36. Defendant has acted with knowledge of AE's rights and with the intent to trade on AE's goodwill and reputation.

37. AE has not authorized the Defendant to utilize, in any way, the LION AND LIONESS and NEW EXTREME Marks.

38. Defendant's acts of advertising, offering for sale, and selling counterfeit goods bearing Plaintiffs' Marks are causing and, unless enjoined by this Court, will continue to cause confusion, mistake, and deception among consumers as to the source, sponsorship, affiliation, or approval of such goods, in addition to causing irreparable injury to Plaintiffs' goodwill, reputation, and business.

39. Defendant's activities constitute infringement in violation of the Lanham Act, 15 U.S.C. § 1114.

40. Defendant's activities constitute willful infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

41. Defendant's actions constitute the use by Defendant of one or more counterfeit marks as defined by 15 U.S.C. §1116(d)(1)(B).

42. AE is entitled to, among other relief, injunctive relief, and an award for actual damages, Defendant's profits, treble damages, and costs of this action under 15 U.S.C. §1116 and §1117 together with prejudgment and post-judgment interest.

43. AE was required to retain the undersigned counsel and has obligated itself to pay the undersigned counsel's reasonable fees and litigation costs, for which AE seeks to recover pursuant to 15 U.S.C. § 1117(a).

WHEREFORE, Plaintiff, AE, respectfully requests entry of final judgment in its favor and against Defendant:

(A) ordering that Defendant and all of its agents, officers, members, employees, representatives, successors, assigns, attorneys, and all other persons acting for, with, by, through, or under its authority be permanently enjoined from: (i) advertising, marketing, promoting, offering for sale, or selling infringing and counterfeit products bearing the LION AND LIONESS and NEW EXTREME Marks; (ii) affixing, using, or displaying any trademark, name, logo, design, or source designation of any kind that is a copy, reproduction, colorable imitation, simulation of, or confusingly similar to the LION AND LIONESS and NEW EXTREME Marks; (iii) using any trademark, name, logo, design, or source designation of any kind similar to the LION AND LIONESS and NEW EXTREME Marks that is likely to cause confusion, mistake, deception, or public misunderstanding that such goods are produced, sponsored, approved, affiliated with, or otherwise authorized by AE; (iv) using any trademark, name, logo, design, or source designation of any kind that dilutes or is likely to dilute the distinctiveness of the LION AND LIONESS and NEW EXTREME Marks; (v) advertising, promoting, offering for sale, or selling counterfeit goods bearing

the LION AND LIONESS and NEW EXTREME Marks; (vi) assisting any third party in engaging in any of the foregoing acts; and (vii) otherwise competing unfairly with Plaintiffs.

(B) ordering that Defendant deliver up for impoundment and for destruction all the counterfeit goods bearing the LION AND LIONESS and NEW EXTREME Marks, along with any promotional material, labels, tags, signs, packages, receptacles, advertising, or other materials in its possession, custody, or control that are found to adopt, infringe, or dilute the LION AND LIONESS and NEW EXTREME Marks;

(C) ordering that Defendant immediately cease and desist from advertising, marketing, promoting, displaying, offering for sale, and selling counterfeit goods bearing the LION AND LIONESS and NEW EXTREME Marks; notify any supplier, vendor, distributor, or other source from whom Defendant obtained such counterfeit goods of this Court's injunction and cease obtaining, purchasing, or receiving such counterfeit goods; and remove from public access and view all counterfeit goods and any goods, packaging, labels, catalogs, advertisements, signs, invoices, displays, promotional materials, and other materials that bear, contain, or display the LION AND LIONESS and NEW EXTREME Marks, or any other mark that is a counterfeit, copy, simulation, confusingly similar variation, or colorable imitation thereof.

(D) Pursuant to 15 U.S.C. §1116(a), directing Defendant to file with the Court and serve on the Plaintiffs within thirty (30) days after issuance of an injunction, a report in writing and under oath setting forth in detail the manner and form in which Defendant has complied with the injunction;

(E) Awarding Plaintiff, AE: (i) all damages caused by the acts or willful acts forming the basis of this Complaint; (ii) additional damages in the amount of Defendant’s profits from the infringement of the LION AND LIONESS and NEW EXTREME Marks and sale of the counterfeit

goods that bear the LION AND LIONESS and NEW EXTREME Marks; (iii) AE's reasonable attorney's fees and costs in bringing and prosecuting this action pursuant to 15 U.S.C. §1117(a) or otherwise awarding AE its reasonable attorney's fees; (iv) prejudgment and post-judgment interest on all monetary awards; (v) treble damages pursuant to 15 U.S.C. §1117(b); and AE reserves the right to elect, at any time before final judgment is entered in this case, an award of statutory damages pursuant to 15 U.S.C. § 1117(c); and

(F) any other relief that this Court deems just and proper.

Plaintiff AE requests all relief afforded as trademark owner and registrant.

**COUNT II**
**FEDERAL UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN IN VIOLATION OF 15 U.S.C. § 1125(a) BY PLAINTIFFS AGAINST DEFENDANT**

44. Plaintiffs, AE and AD, repeat and reallege paragraphs 1 through 31 as if fully stated herein.

45. Plaintiffs, AE and AD, are informed, believe, and thereon allege that AE Marks, including the LION AND LIONESS and NEW EXTREME Marks, have become associated in the minds of consumers with the Plaintiffs and products branded with LION AND LIONESS and NEW EXTREME Marks.

46. Defendant intentionally adopted the LION AND LIONESS and NEW EXTREME Marks to advertise, promote, market, offer for sale, and sell counterfeit goods directly to consumers to trade on Plaintiffs' goodwill and to cause confusion among consumers.

47. Plaintiffs did not authorize Defendant to utilize, in any way, the LION AND LIONESS and NEW EXTREME Marks.

48. Defendant's acts cause confusion, deception, and injury to goodwill and, unless enjoined by this Court, will continue to cause confusion, deception, and injury to goodwill.

49. Defendant's acts constitute unfair competition and false designation of origin in violation of 15 U.S.C. § 1125(a).

50. Plaintiffs have been damaged and deprived of substantial sales of their dietary and nutritional supplements and have been deprived of the value of their goodwill in AE Marks, including the LION AND LIONESS and NEW EXTREME Marks as commercial assets, in amounts to be established according to proof.

51. Upon information and belief, Defendant has made, and will continue to make, substantial profits and gains to which it is not entitled.

52. By reason of Defendant's infringing and counterfeiting activities, Plaintiffs have and will continue to be irreparably harmed and damaged, and Plaintiffs' remedies at law are inadequate to compensate for this harm.

53. Plaintiffs are entitled to, among other relief, injunctive relief and an award of actual damages, Defendant's profits, enhanced damages, and the costs of this action under 15 U.S.C. §§ 1116 and 1117, together with prejudgment and post-judgment interest.

54. Plaintiffs were required to retain the undersigned counsel and have obligated themselves to pay the undersigned counsel's reasonable fees and litigation costs, for which Plaintiffs seek to recover pursuant to 15 U.S.C. § 1117(a). Plaintiffs reserve the right to elect, at any time before final judgment is entered in this case, an award of statutory damages pursuant to 15 U.S.C. § 1117(c).

WHEREFORE, Plaintiffs respectfully request entry of a final judgment in their favor and against Defendant:

(A) Ordering that Defendant and all of its agents, officers, members, employees, representatives, successors, assigns, attorneys, and all other persons acting for, with, by, through, or

under its authority be permanently enjoined and restrained from: (i) advertising, marketing, promoting, offering for sale, or selling infringing and counterfeit products bearing the LION AND LIONESS and NEW EXTREME Marks; (ii) using any trademark, name, logo, design, or source designation of any kind that is a copy, reproduction, colorable imitation, simulation of, or confusingly similar to the LION AND LIONESS and NEW EXTREME Marks; (iii) using any trademark, name, logo, design, or source designation of any kind that is likely to cause confusion, mistake, deception, or public misunderstanding that such goods are produced, sponsored, approved, affiliated with, or otherwise authorized by Plaintiffs; (iv) using any trademark, name, logo, design, or source designation of any kind that dilutes or is likely to dilute the distinctiveness of the LION AND LIONESS and NEW EXTREME Marks; (v) advertising, promoting, offering for sale, or selling counterfeit goods bearing the LION AND LIONESS and NEW EXTREME Marks ; (vi) assisting any third party with any of the above; and (vii) otherwise competing unfairly with Plaintiffs;

(B) Ordering Defendant to deliver up for impoundment and for destruction all the counterfeit goods, along with any promotional material, labels, tags, signs, packages, receptacles, advertising, or other materials in its possession, custody, or control that are found to adopt, infringe, or dilute the LION AND LIONESS and NEW EXTREME Marks;

(C) Ordering Defendant to direct any supplier, vendor, distributor, or other source of the counterfeit goods that bear the LION AND LIONESS and NEW EXTREME Marks to cease forthwith supplying, advertising, promoting, selling, or offering for sale such counterfeit goods and any goods, packaging, labels, catalogs, advertisements, signs, invoices, displays, and other materials that bear, contain, or display the LION AND LIONESS and NEW EXTREME Marks, or any other mark that is a counterfeit, copy, simulation, confusingly similar variation, or colorable

imitation thereof, and to immediately remove them from public access and view.

(D) Pursuant to 15 U.S.C. § 1116(a), directing Defendant to file with the Court and serve on the Plaintiffs within thirty (30) days after issuance of an injunction, a report in writing and under oath setting forth in detail the manner and form in which Defendant has complied with the injunction;

(E) For an order from the Court requiring that Defendant provide complete accountings and for equitable relief, including that Defendant disgorge and return or pay its ill-gotten gains obtained from the illegal transactions entered into and/or pay restitution, including the amount of monies that should have been paid if Defendant had complied with its legal obligations, or as equity requires;

(F) Awarding Plaintiffs AE and AD: (i) all damages caused by the acts or willful acts forming the basis of this Complaint; (ii) additional damages in the amount of Defendant's profits from the infringement of the LION AND LIONESS and NEW EXTREME Marks and sale of the counterfeit goods that bear AE Marks including the LION AND LIONESS and NEW EXTREME Marks; (iii) their reasonable attorney's fees and costs in bringing and prosecuting this action pursuant to 15 U.S.C. §1117(a) or otherwise awarding Plaintiffs their reasonable attorney's fees; and (iv) prejudgment and post-judgment interest on all monetary awards;

(G) any other relief that this Court deems just and proper.

Plaintiff AE requests all relief afforded as trademark owner and registrant. Plaintiff AD requests all relief to which it is entitled as exclusive licensee under statute or common law.

**COUNT III**
**COMMON LAW TRADEMARK INFRINGEMENT BY PLAINTIFFS AGAINST DEFENDANT**

55. Plaintiffs AE and AD repeat and reallege paragraphs 1 through 31 as if fully stated

herein.

56. AE is the rightful owner of the LION AND LIONESS and NEW EXTREME Marks and has rights in the same by virtue of its ownership and by virtue of AD's use of LION AND LIONESS and NEW EXTREME Marks as an exclusive licensee within interstate commerce.

57. The LION AND LIONESS and NEW EXTREME Marks are suggestive and inherently distinctive.

58. Defendant intentionally, willfully, and knowingly adopted the LION AND LIONESS and NEW EXTREME Marks to compete with Plaintiffs in an effort to trade on Plaintiffs' goodwill and to confuse consumers as to the source of the counterfeit goods bearing the LION AND LIONESS and NEW EXTREME Marks.

59. Plaintiffs have not authorized Defendant to utilize, in any way, the LION AND LIONESS and NEW EXTREME Marks.

60. Defendant's activities are causing and, unless enjoined by this Court, will continue to cause a likelihood of confusion and deception of members of the trade and the public as to the source of the counterfeit goods that bear AE Marks, including the LION AND LIONESS and NEW EXTREME Marks, in addition to causing injury to Plaintiffs' goodwill and reputation.

61. Defendant's activities constitute infringement of the LION AND LIONESS and NEW EXTREME Marks in violation of Florida common law.

62. On information and belief, Defendant has made, and will continue to make, substantial profits and gains to which it is not entitled.

63. By reason of Defendant's infringing and counterfeit acts, Plaintiffs have and will continue to be irreparably harmed and damaged, and Plaintiffs' remedies at law are inadequate to compensate for this harm.

WHEREFORE, Plaintiffs respectfully request entry of final judgment in their favor and against Defendant:

(A) Permanently enjoining Defendant, and all of its agents, officers, members, employees, representatives, successors, assigns, attorneys, and all other persons acting for, with, by, through, or under its authority, from: (i) advertising, marketing, promoting, offering for sale, or selling infringing and counterfeit products bearing the LION AND LIONESS and NEW EXTREME Marks; (ii) using any trademark, logo, design, or source designation that is identical, confusingly similar to, or dilutive of the LION AND LIONESS and NEW EXTREME Marks; (iii) assisting any third party in any of the above acts; and (iv) otherwise unfairly competing with Plaintiffs;

(B) Ordering Defendant to deliver up for impoundment and destruction all counterfeit or infringing goods, packaging, advertising, and promotional materials bearing the LION AND LIONESS and NEW EXTREME Marks;

(C) Ordering Defendant to notify any supplier, vendor, distributor, or other source from whom Defendant obtained the infringing goods to immediately cease supplying such infringing goods to Defendant and to cease offering for sale or selling such infringing goods to Defendant.

(D) Requiring Defendant to provide a full accounting of its sales, profits, and benefits derived from the infringement, and awarding equitable relief, including disgorgement of ill-gotten gains and restitution;

(E) Awarding Plaintiffs compensatory damages and disgorgement of Defendant's profits resulting from Defendant's common law trademark infringement, together with prejudgment and post-judgment interest; and

(F) Granting such other and further relief as this Court deems just and proper under

Florida common law.

Plaintiff AE requests all relief afforded as trademark owner and registrant. Plaintiff AD requests all relief to which it is entitled as exclusive licensee under statute or common law.

**COUNT IV**
**COMMON LAW UNFAIR COMPETITION BY PLAINTIFFS AGAINST DEFENDANT**

64. Plaintiffs AE and AD repeat and reallege paragraphs 1 through 31 as if fully stated herein.

65. Defendant has intentionally, knowingly, and unlawfully engaged in unfair competition by marketing, promoting, and selling counterfeit goods bearing the LION AND LIONESS and NEW EXTREME Marks, with the purpose and effect of deceiving the public and trading off the reputation and goodwill developed by Plaintiffs in the LION AND LIONESS and NEW EXTREME Marks.

66. Defendant is misappropriating the distinctive appearance, source-identifying trademarks, and product labeling of Plaintiffs' authentic goods. Defendant's packaging is designed to substantially mimic Plaintiffs' authentic product appearance, including the LION AND LIONESS and NEW EXTREME Marks, thus misleading consumers. An actual photo of the Defendant's counterfeit goods is attached hereto as **Exhibit D.**

67. Defendant's conduct is calculated to mislead and deceive the public into believing that its products originate from, are affiliated with, or are approved by Plaintiffs, when in fact they are not.

68. By selling counterfeit goods that bear the LION AND LIONESS and NEW EXTREME Marks, Defendant has knowingly and willfully engaged in acts of unfair competition and misappropriation of Plaintiffs' goodwill and business reputation.

69. Defendant's actions have caused and will continue to cause confusion among the

public and harm to Plaintiffs' reputation, goodwill, and relationships with consumers and other retailers.

70. As a direct and proximate result of Defendant's actions, Plaintiffs have suffered and will continue to suffer irreparable harm to their goodwill, brand integrity, and customer relationships. Plaintiffs have no adequate remedy at law for these injuries.

WHEREFORE, Plaintiffs respectfully request entry of a final judgment in their favor and against Defendant:

(A) Permanently enjoining Defendant, and all of its agents, officers, members, employees, representatives, successors, assigns, attorneys, and all other persons acting for, with, by, through, or under its authority, from: (i) advertising, marketing, promoting, offering for sale, or selling counterfeit or infringing products bearing the LION AND LIONESS and NEW EXTREME Marks; (ii) using any trademark, name, logo, design, or source designation that is identical or confusingly similar to the LION AND LIONESS and NEW EXTREME Marks; (iii) assisting any third party with any of the above; and (iv) otherwise engaging in unfair competition or passing off Plaintiffs' marks or products;

(B) Ordering Defendant to deliver up for impoundment and destruction all counterfeit or infringing goods and promotional materials bearing the LION AND LIONESS and NEW EXTREME Marks;

(C) Ordering Defendant to direct any supplier, vendor, distributor, or other source from whom Defendant obtained the infringing goods to cease forthwith supplying, advertising, promoting, selling, or offering for sale such infringing goods and any goods, packaging, labels, catalogs, advertisements, signs, invoices, displays, and other materials bearing the infringing marks, and to immediately remove them from public access and view.

(D) Requiring Defendant to provide a full accounting of its sales, profits, and benefits derived from the unfair competition, and awarding equitable relief, including disgorgement of ill-gotten gains and restitution;

(E) Awarding Plaintiffs compensatory damages, together with Defendant's profits resulting from the unfair competition, and prejudgment and post-judgment interest on all monetary awards; and

(F) Granting such other and further relief as this Court deems just and proper under Florida common law.

Plaintiff AE requests all relief afforded as trademark owner and registrant. Plaintiff AD requests all relief to which it is entitled as exclusive licensee under statute or common law.

**COUNT V**
**UNFAIR AND DECEPTIVE TRADE PRACTICES (FLA. STAT. § 501.204) BY PLAINTIFFS AGAINST DEFENDANT**

71. Plaintiffs repeat and reallege paragraphs 1 through 31 as if fully stated herein.

72. Defendant's unauthorized use of the LION AND LIONESS and NEW EXTREME Marks, and the sale of the counterfeit goods bearing AE Marks, including the LION AND LIONESS and NEW EXTREME Marks, constitutes unfair and deceptive acts or practices in the course of a business, trade, or commerce in violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201 *et seq.*

73. As a direct and proximate result of Defendant's unfair and deceptive trade practices, Plaintiffs have suffered actual economic losses arising from Defendant's unauthorized sale of counterfeit goods bearing the LION AND LIONESS and NEW EXTREME Marks, including economic injury to AE's commercial interests as the trademark owner and AD's commercial interests as the exclusive licensee and authorized distributor of authentic products. Plaintiffs seek

recovery of their actual damages to the extent permitted under Fla. Stat. §501.211(2), in amounts to be established through discovery and proven at trial.

74. Plaintiffs were required to hire the undersigned counsel and obligated themselves to pay the undersigned counsel's reasonable fees and litigation costs, for which Plaintiffs seek to recover pursuant to Fla. Stat. § 501.2105.

75. Defendant's conduct has not only injured Plaintiffs, but also likely the consuming public. By the sale of unauthentic and unregulated dietary supplements, Defendant's unlawful conduct is willful, malicious, and reckless in that it poses serious health risks to consumers, who reasonably rely on AE's marks as indicators of quality, safety, and regulatory compliance.

76. Defendant knowingly and intentionally engaged in deceptive and unfair trade practices by advertising, offering for sale, and selling counterfeit goods bearing AE Marks, including the LION AND LIONESS and NEW EXTREME Marks, and falsely suggesting an association with authentic products bearing AE Marks, including the LION AND LIONESS and NEW EXTREME Marks.

77. Pursuant to Fla. Stat. § 501.211, Plaintiffs, as persons aggrieved by and who have suffered a loss as a result of Defendant's violations of the Florida Deceptive and Unfair Trade Practices Act, are entitled to injunctive relief and to recover their actual damages, together with their reasonable attorney's fees and court costs pursuant to Fla. Stat. § 501.2105.

WHEREFORE, Plaintiffs request entry of a final judgment in their favor and against Defendant:

(A) Permanently enjoining the deceptive and unfair trade practices pursuant to Fla. Stat. § 501.211(1);

(B) Awarding Plaintiffs their actual damages pursuant to Fla. Stat. § 501.211(2);

(C) Attorney's fees and costs pursuant to §501.2105;

(D) Pre-judgment and post-judgment interest on all monetary awards; and

(E) Any other relief that this Court deems just and proper.

Plaintiff AE requests all relief afforded as trademark owner and registrant. Plaintiff AD requests all relief to which it is entitled as exclusive licensee under statute or common law.

Date: November 3, 2026.

Respectfully submitted,

By: *<u>/s/ Kaustubh Nadkarni</u>*
**Kaustubh Nadkarni, Esq.**
Florida Bar No. 98708

**NADKARNI LAW PLLC**
1900 N. Bayshore Drive,
Unit 1A, Ste. 140, Miami, FL 33132
Phone: (786) 300 1227
Email: ip@nadkarnilaw.com

Attorney for Plaintiffs